UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

GRADY WAYNE LEWIS )
)
V. ) NO. 2:10-CV-139
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation of the administrative denial of his applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act following a hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 41 years old on his alleged disability onset date of February 28, 2003. He has a high school education. He has past relevant work experience as a machine operator/laborer which was unskilled and required medium exertion, and as a forklift operator which was semiskilled and also required medium exertion.

The medical evidence is set forth in the Commissioner's brief as follows:

> Between October 2001 and September 2008, Lewis sought treatment at Slonaker Medical Associates for pain in his ankles and feet (Tr. 180–241, 245–47). Lewis's thought content and intelligence were normal; his memory was intact (Tr. 180–241, 245–47, 285). Lewis was attended to by Suzonne Swinhart, a nurse practitioner at the facility (Tr. 180–241, 245–47). She opined that Lewis was disabled and incapable of ever engaging in work-related activities (Tr. 297–98).
> Dr. Diane Whitehead, a licensed clinical psychologist, and Anna Palmer, a licensed psychological examiner, evaluated Lewis's psychological condition in September 2008 (Tr. 249–53). Lewis denied ever having received mental health treatment (Tr. 250). Lewis was alert and fully oriented (Tr. 250). His attention, concentration, and memory were intact (Tr. 250). Lewis "did not appear to be presenting his best effort during this examination" (Tr. 250). The consultative examiners found that Lewis "demonstrates independence in his daily activities" and that the "sustainability of his activity level appears limited by his physical problems rather than by any psychological factors" (Tr. 251). They concluded that Lewis's "concentration and persistence appears adequate to meet the demands of simple and somewhat detailed work-related decisions" and, further, that he "does not appear to be limited in his ability to adapt to changes in the workplace, to be aware of normal hazards, or to take appropriate precaution" (Tr. 252–53).
> That month, Dr. Krish Purswani assessed Lewis's physical condition (Tr. 261–64). Lewis was in no apparent distress (Tr. 262). Lewis complained of pain in his ankles, feet, back, and hips (Tr. 261). While Lewis attributed his ankle and feet pain to a car accident in the late 1980s, the alleged onset of his back and hip pain was "without any injury" (Tr. 261). Lewis attributed his back pain to recent weight gain

2

and noted that he had never sought out treatment for his hip (Tr. 261). Although surgery had relieved the pain in Lewis's ankles and feet for over a decade, the pain returned in 2006 (Tr. 261–62). Lewis did not have "any explanation for, or evaluation of, this alleged recurrence" (Tr. 262).

      Dr. Purswani determined that, while Lewis used a cane to get around, the cane was "not medically necessary, given the fact that after the foot and ankle surgeries for about a decade, he never used the cane and worked as a mechanic operator at the BMW Factory in South Carolina for two months also" (Tr. 262, 264). Lewis was able to get on and off the examination table "without help" (Tr. 262). Lewis had a normal range of motion in his back and hips; he retained full strength in his upper and lower extremities (Tr. 263–64). Both ankles were "stable," and his toe and heel strength was normal (Tr. 263–64). Dr. Purswani observed that Lewis's "effort was limited" and that "[h]e was very slow and uncooperative throughout the examination" (Tr. 262). Dr. Purswani opined that Lewis could "frequently lift 40 pounds 2/3 of the time in an 8-hour day," stand and walk with breaks "for a total of 7 hours in an 8-hour day," and sit "for a total of 8 hours in an 8-hour day" (Tr. 264).

      Dr. Joe Allison, a state agency reviewing physician, completed an assessment of Lewis's physical condition in September 2008 (Tr. 265–72). He deemed Lewis's allegations of disabling pain to be only "partially credible" (Tr. 272). Dr. Allen concurred with Dr. Purswani's assessment that Lewis did not need an assistive device to get around (Tr. 272). Dr. Allen determined that Lewis was capable of carrying or lifting up to 20 pounds occasionally, carrying or lifting up to ten pounds frequently, standing or walking for about six hours in an eight-hour work day, and sitting for about six hours in an eight-hour work day (Tr. 266).

      Dr. Pilar Vargas, a state agency reviewing psychiatrist, completed an assessment of Lewis's psychological condition that month (Tr. 273–86). Dr. Vargas deemed Lewis's allegations of a disabling mental condition only "partially credible" (Tr. 285). Despite complaints about anxiety, Lewis had never been treated for mental health issues (Tr. 285). Dr. Vargas determined that, while mildly limited in maintaining concentration, persistence, or pace, Lewis was not limited in his activities of daily living or in maintaining social functioning (Tr. 283).

[Doc. 15, pgs. 2-4].

Ms. Donna Bardsley, a vocational expert ["VE"] testified at the administrative hearing. After classifying the plaintiff's past relevant work, the ALJ asked her to assume a person of the plaintiff's age, education and vocational experience. He then asked her "to assume the Claimant's restricted to the exertional demands of light work which is work that requires lifting or carrying of up to 20 pounds occasionally and 10 pounds frequently;

however, if you'd further assume the Claimant cannot stand or walk over 2 hours in an 8-hour day, if you assume he could do simple, unskilled jobs only. Now with these restrictions, first of all, would there be jobs that the Claimant could perform that exist in the regional and national economy?" Ms. Bardsley identified the jobs of hand packager, with 500 in the region and 650,000 nationwide; sorter, with 400 in the region and 400,000 nationwide; assembler, with 450 in the region and 625,000 in the nation; inspector, with 375 in the region and 365,000 in the nation; and ticket seller, with 300 in the region and 285,000 nationwide (Tr. 33-34).

The ALJ then asked a second hypothetical changing the exertional demand to sedentary work. Ms. Bardsley identified hand packager, with 250 regionally and 225, 000 nationwide; sorter, with 185 regionally and 190,000 nationwide; and inspector with 195 in the region and 165,000 nationwide. (Tr. 34).

For some unfathomable reason, plaintiff's counsel at the hearing, who is not her counsel in this action, asked her "how many hours during an eight-hour workday to do light work are you supposed to have..." Ms. Bardsley replied that "for a *full* range of light work...it would be six out of eight." Counsel, still obviously confused, inquired whether being able to stand or walk for only two hours "would cut out those jobs?" Ms. Bardsley stated in so many words that the jobs she identified were for a *reduced* range of light work "where maybe you could lift the 20 pounds but you had to do more sitting than standing and walking." (Tr. 35).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of osteoarthritis in his feet and ankles, and anxiety (Tr. 12), based upon a careful review and

4

discussion of plaintiff's medical history (Tr. 12-14). He found that the plaintiff had the residual functional capacity ["RFC"] to lift/carry a maximum of 20 pounds occasionally and 10 pounds frequently, stand and or walk for 2 hours total and sit for 6 hours total, and was limited to performing simple, unskilled work (Tr. 15). The ALJ discussed why he found the plaintiff's subjective complaints "credible and convincing" only to the extent compatible with the RFC finding. He noted plaintiff dropping a 50 gallon drum on his foot while testifying he could now only lift a gallon of milk. Also, he credited the observation of Dr. Purswani that plaintiff's cane was "self-prescribed" and that Dr. Purswani opined that it was not medically necessary. He explained he gave greater weight to the mental evaluation of Dr. Whitehead than that of the State Agency psychological consultants, and thus found that the plaintiff did have a severe mental impairment of anxiety. He gave weight to Dr. Purswani, but found the plaintiff more limited than Dr. Purswani who felt the plaintiff could lift 40 pounds for 2/3rds of the time during an 8 hour day. He rejected the opinion of Nurse Swinhart because she was not an acceptable medical source but more importantly because the records from her office did not support her opinion. He found that with his RFC, the plaintiff could not return to any of his past relevant work (Tr. 16-17).

Based upon Ms. Bardsley's testimony, he found that there were a significant number of jobs in the national economy which the plaintiff could perform in spite of his impairments. Accordingly, he found that he was not disabled (Tr. 18).

Plaintiff asserts that the ALJ's findings are not supported by substantial evidence. Specifically, he asserts that the ALJ did not give appropriate weight to the opinion of Nurse Swinhart. He also argues that the question posed by the ALJ to Ms. Bardsley was defective

5

because it referenced "light work" while limiting the plaintiff to a maximum of 2 hours per day standing and walking, while light work requires 6 hours of standing and walking. He also asserts that limiting the plaintiff to simple, unskilled jobs does not adequately address the limitations imposed by the plaintiff's mental impairment, at least without a further explanation by the ALJ of how the impairment affects specific work functions. Finally, he states that the ALJ did not properly evaluate the plaintiff's subjective complaints of pain.

In the opinion of the Court, this adjudication by ALJ Davenport is a model of fair, comprehensive, and well-explained decision making. He sent the plaintiff for both physical and mental consultative examinations. He found even greater limitations than the objective record indicated. He properly utilized the services of a vocational expert. For all of this, the Court commends him.

Regarding the argument that the ALJ did not give proper weight to the opinion of Nurse Swinhart that the plaintiff couldn't work and that this would be so for his lifetime, the fact that she is but a nurse practitioner and thus not an "acceptable medical source" is the least compelling reason for discounting her testimony. Indeed, the records from her office do not support her opinion, which was couched in language that strayed from an evaluation of plaintiff's capacity into questions of disability which are the province of the Commissioner. In light of the objective observations contained in those records, and the persuasive findings of the consultative examiners, it would not matter if Nurse Swinhart was a board-certified physician. He properly gave her opinion no weight, and there was an abundance of substantial evidence to support his RFC finding.

The argument regarding the question to the VE is mystifying. The ALJ, in as

unambiguous language as possible, asked her about jobs which could be performed by a person who could perform a *limited* range of light work, the physical limitation being in the amount of time they could stand or walk. Ms. Bardsley's testimony on examination by counsel at the hearing shows that she was not confused and knew she was giving jobs which a person with light work lifting capacity, and who could only walk for two hours, could perform. The only confusion was on the part of plaintiff's counsel at the hearing. In any event, the Court is of the opinion that there is also proof of a significant number of *sedentary* jobs which plaintiff could perform if he was limited to simple, unskilled sedentary work.

As for the argument that the ALJ did not properly take into account the plaintiff's severe mental impairment in arriving at his RFC, there was ample substantial evidence that there was no severe mental impairment whatsoever. The mere taking of Xanax does not necessarily equate with having a severe mental impairment, and it certainly does not mean that the plaintiff was disabled because of it. The ALJ adequately explained the basis of his findings, and gave the plaintiff considerable benefit of the doubt in limiting him to simple, unskilled work.

With respect to the finding that the plaintiff's subjective complaints were not fully credible, the examples given by the ALJ of contradictions in his assertions and the reports of the examiners provide ample evidence to support his findings in that regard.

There was substantial evidence to support the findings of the ALJ in all respects. He committed no errors of law and wrote a clear, convincing and competent opinion. Therefore, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be DENIED, and that the Motion for Summary Judgment of the defendant Commissioner

[Doc. 14] be GRANTED.[1]

Respectfully submitted:

 s/ Dennis H. Inman 
United States Magistrate Judge

---

[1]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).